PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. U.S. CREDIT FUNDING, LTD., *et al.*, Defendants-Appellees.

First District (6th Division) No. 1—90—0635

Opinion filed March 28, 1991.—Rehearing denied May 22, 1991.

Pretzel & Stouffer, Chartered, of Chicago (Robert Marc Chemers, Scott O. Reed, and Robert J. Franco, of counsel), for appellant.

Pinderski & Pinderski, Ltd., of Palatine (Jerome W. Pinderski, Jr., and Paul C. Pinderski, of counsel), for appellees.

PRESIDING JUSTICE RAKOWSKI delivered the opinion of the court:

Plaintiff-appellant Pekin Insurance Company (Pekin) brought a declaratory action against its insured, U.S. Credit Funding, Ltd. (U.S. Credit), seeking to obtain a declaration that Pekin's insurance policy did not obligate Pekin to defend or indemnify U.S. Credit in a lawsuit

brought on behalf of Beth Trilling, a minor. The Trilling lawsuit arose from an accident occurring on January 22, 1987, in which Beth Trilling was struck by an automobile driven by defendant Heather Gould. A bench trial ensued, and the trial court entered judgment against Pekin. Pekin appeals the entry of judgment against it and in favor of defendants.[1] A number of issues are raised on appeal, including: (1) whether the trial court's finding that U.S. Credit owned the automobile involved in the accident was against the manifest weight of the evidence; and (2) whether section 154 of the Insurance Code (Ill. Rev. Stat. 1987, ch. 73, par. 766) precludes Pekin from raising the defense of fraud with respect to the issue of U.S. Credit's ownership of the vehicle. We reverse.

On January 22, 1987, Heather Gould, a minor and the daughter of Jack Gould, a principal of U.S. Credit, was driving a 1976 Ford Granada car. The car struck and injured Trilling. Later that same day, Jack Gould applied for and was issued by Pekin a business automobile policy to insure three automobiles, including the 1976 Ford Granada. The trial court found that Gould made a material misrepresentation to Pekin regarding his knowledge of the accident. Defendant Trilling does not dispute the existence of this material misrepresentation on the part of Gould. The result of this misrepresentation was that the policy was backdated to become effective January 21, 1987, so as to provide coverage for the Trilling lawsuit.

At trial, Jack Gould testified that the Granada was owned by U.S. Credit, although at his deposition he conceded that his wife Roberta Gould's name was on the title to the vehicle. Gould contended that the vehicle had been transferred to U.S. Credit several months before it was placed on the Pekin policy. He said that there was a handwritten receipt for the transfer, but he could produce no written documentation supporting the transfer. Gould further testified at trial that after the accident, he told a representative of the towing company that U.S. Credit was the owner of the car at the time. At his deposition, however, he stated that he thought his wife was listed as the owner when the car was given over to the tow truck driver.

Roberta Gould testified at trial that in October of 1986, she sold the subject automobile to U.S. Credit for $100.00. She was not sure whether the sale was for cash or check, and though she thought the car may have been paid for by check, she did not have a cancelled check concerning the payment. She testified that she did have a copy of the handwritten bill of sale, but this was not admitted into evidence.

---

[1] U.S. Credit and Gould have not participated in this appeal.

Prior to trial, on March 21, 1988, Pekin filed a request to admit facts, which U.S. Credit and Heather Gould never answered. Requests numbers three and four stated:

"3. That on January 22, 1987, U.S. CREDIT FUNDING, LTD. was not the title holder of the 1976 Ford automobile.

4. That U.S. CREDIT FUNDING, LTD. did not purchase the aforesaid 1976 Ford automobile on or prior to January 21, 1987."

During cross-examination of Jack Gould, Pekin offered a certified copy of the Illinois Secretary of State's records pertaining to the title of the 1976 Ford Granada. This record, which was introduced into evidence, contained a duplicate certificate of title in the name of Roberta Gould. This certificate, Pekin asserts and Trilling does not dispute, is dated November 14, 1986.

Pekin did not attach a copy of the application for insurance to the policy. At trial, testimony from a Pekin representative established that the policy application and Secretary of State records were considered in determining whether to underwrite a particular policy. On the application for the policy in question, only Jack Gould and his partner at U.S. Credit, John Spiess, were listed as the drivers, and U.S. Credit was listed as the owner. Pekin would not have underwritten the policy at the risk indicated on the application had Pekin known either that the automobile was involved in an accident on January 22, 1987, or that there was going to be an underaged driver of the vehicle. Had the application indicated that the Granada was owned by someone other than the named insured (U.S. Credit), the vehicle would have had to be insured on another policy.

Before resolving the issues we are confronted with, we clarify that we are not confronted with the issue of whether the policy itself could provide coverage on a vehicle which the insured did not "own." The sole basis of Pekin's complaint was that the misrepresentation that U.S. Credit owned the vehicle absolved Pekin from responsibility under the policy. The parties in their briefs have both taken the position that if U.S. Credit did not own the vehicle, a representation that it did own the vehicle could absolve Pekin of responsibility.

Pekin argues that the trial court's finding that U.S. Credit owned the Granada was contrary to the manifest weight of the evidence. Pekin's argument here is that the Secretary of State's certificate of title, which indicated that Roberta Gould's name appeared on a duplicate title application for the vehicle, was not sufficiently rebutted by competent evidence of contrary ownership.

▮▮ Trilling argues the certificate of title listing Roberta Gould as the duplicate title holder is not presumptive evidence that Roberta

Gould was, in fact, the owner of the vehicle. The certificate of title, however, "is *evidence* of title, though it is not conclusive and one can own an automobile though the certificate of title is in the name of another." (Emphasis in original.) (*State Farm Mutual Automobile Insurance Co. v. Lucas* (1977), 50 Ill. App. 3d 894, 898, 365 N.E.2d 1329.) A *prima facie* presumption of ownership arises from a certificate of title; this presumption may be rebutted by competent evidence of actual ownership. (*Klein v. Pritikin* (1972), 6 Ill. App. 3d 323, 328, 285 N.E.2d 457.) Thus, the duplicate title application did present presumptive evidence of ownership, and the issue is whether this presumption of ownership was sufficiently rebutted by competent evidence at trial.

Trilling argues that there was a sale by Roberta Gould of the Granada to her husband's business in the fall of 1986, and that subsequent to this sale, her husband's business became incorporated in December of 1986. Then, according to Trilling's theory, the unincorporated business "transferred" the Granada to U.S. Credit, the newly formed corporation. Either separate to this argument, or in conjunction with it, Trilling argues that the testimony of the Goulds as to the purchase of the automobile and U.S. Credit's dominion over the automobile was uncontradicted at trial and, hence, the trial court's finding that U.S. Credit owned the automobile must stand. Neither argument is persuasive.

■ Trilling's first argument is unpersuasive for a number of reasons. First and foremost, Trilling has pointed to no evidence adduced at trial which supports the theory of a precorporate transfer. To be sure, discovery in the case revealed that U.S. Credit was incorporated in December of 1986. Trilling has not, however, pointed to any evidence of record establishing the facts of and circumstances surrounding the precorporate transfer of assets from the unincorporated entity to U.S. Credit. Trilling relies on the argument she advanced in response to a motion for summary judgment that it can be reasonably surmised that, upon incorporation, the assets of the unincorporated entity were transferred to U.S. Credit. Whether the inference of, in the absence of facts, the precorporate "transfer" was a proper basis to deny summary judgment is an issue that is not before us. The important point is that no facts supporting the theory were elicited at trial. Moreover, we note that the record reflects that the incorporator of U.S. Credit was an entity named "U.S. Credit Repair Center, Ltd." Roberta Gould's testimony was that she sold the Granada to U.S. Credit, not to this prior entity. In the absence of any plausible evidence at trial supporting Trilling's precorporate transfer theory, we refuse to adopt it.

■ Trilling also argues that the evidence of the sale to U.S. Credit was uncontradicted, and that this, along with the testimony of U.S.

Credit's control over and use of the vehicle, or the latter standing alone, requires that we affirm the trial court's finding on the ownership issue. Initially, we note that the presumption of ownership was that Roberta Gould was the owner, given the content of the certificate of title. (*Klein,* 6 Ill. App. 3d 323, 285 N.E.2d 457. supra) In light of this, and given that Trilling has not provided any authority in support of the contention, we do not believe that evidence of use and control over a vehicle, alone, is sufficient to rebut the presumption of ownership.

 ■ Moreover, we hold that the testimony of the Goulds at trial was so inherently unbelievable that the presumption of ownership was unrebutted. The evidence defendants put forth to rebut this presumption consisted of testimony that was often impeached and was contradictory. For instance, as Pekin points out, there was a discrepancy between Jack and Roberta Gould as to whether the purchase was made by cash or check. At his deposition, Jack Gould thought that Roberta Gould was listed as the owner of the vehicle at the time it was given to the towing company, after the accident. No check was produced, nor any other evidence documenting the purchase. Roberta Gould testified that she had a bill of sale for the purchase, which was not introduced into evidence. The record reveals this handwritten document, dated in October of 1986, to reflect a sale to "U.S. Credit Funding."

"U.S. Credit Funding, Ltd.," however, did not exist as a corporation until December of 1986. The only evidence in the record as to the possible name of the unincorporated business entity states that an incorporator of U.S. Credit was an entity named "U.S. Credit Repair Center, Ltd." The Secretary of State document appears to be dated in November of 1986, after the alleged sale. The trial court found, in effect, that Jack Gould lied in just about every other respect than the ownership issue. Under these circumstances, we believe that the trial court's finding on the ownership issue was, in fact, against the manifest weight of the evidence.

██ In resolving the remaining issue, we begin by articulating the substance and purpose of section 154 of the Insurance Code. That section provides, in pertinent part:

> "No misrepresentation or false warranty made by the insured or in his behalf in the negotiation for a policy of insurance, or breach of a condition of such policy shall defeat or avoid the policy or prevent its attaching unless such misrepresentation, false warranty or condition shall have been stated in the policy or endorsement or rider attached thereto, or in the written application therefore, of which a copy is attached to or endorsed to the pol-

icy, and made a part thereof." (Ill. Rev. Stat. 1987, ch. 73, par. 154.)

The court in the recent case of *Gibralter Casualty Co. v. A. Epstein & Sons International, Inc.* (1990), 206 Ill. App. 3d 272, 562 N.E.2d 1039, 1042, discussed the statute as follows:

> "The primary purpose of section 154 is to allow for objective evidence of negotiations at the time of application for protection of the insured from possible frauds by insurance agents in falsifying answers given by the insured in applying for insurance. [Citation.] In reviewing insurance policies in the context of an issue regarding an insurer's compliance with section 154, courts require strict compliance with section 154's requirements and, if the insurer has not attached the application to the policy, the policy must include a specific, unambiguous statement indicating the misrepresentation. [Citations.]" 206 Ill. App. 3d at 277, 562 N.E.2d at 1042.

In this case, Pekin did not attach the application to the policy. Pekin argues that the misrepresentation of ownership of the Granada is apparent from the face of the policy. Pekin asserts that as Roberta Gould's name appears nowhere on the face of the policy, and the named insured is U.S. Credit, this indicates that U.S. Credit is the owner of the Granada. In fact, the policy states that the vehicles which are covered include those listed under the description of "owned vehicles" in the declaration, and the Granada is listed on the declaration as an owned vehicle.

■ In *Government Employees Insurance Co. v. Dennis* (1965), 65 Ill. App. 2d 365, 212 N.E.2d 759, one of the cases upon which Pekin specifically relies, the declaration to the policy stated that the insured was the owner of the cars. The court held that section 154 was not a bar to the insurer's defense. Here, as in *Dennis*, the declaration's effect is to represent the insured as the owner of the Granada. We therefore hold that section 154 does not preclude Pekin from asserting the defense of fraudulent misrepresentation as the asserted misrepresentation appears on the policy itself.

Accordingly, the judgment of the circuit court is reversed.

Reversed.

McNAMARA and LaPORTA, JJ., concur.