*In re* ESTATE OF STEPHEN W. HOLMGREN, Deceased (Leonard W. Holmgren *et al.*, Petitioners-Appellants, v. Gianna A. Holmgren, as Adm'r of the Estate of Stephen W. Holmgren, Respondent-Appellee).

Third District   No. 3—92—0023

Opinion filed December 3, 1992.

Katz, McAndrews, Balch, Lefstein & Fieweger, of Rock Island (Samuel S. McHard, of counsel), for appellants.

Vonachen, Lawless, Trager & Slevin, of Peoria (John A. Slevin, of counsel), for appellee.

JUSTICE HAASE delivered the opinion of the court:

The decedent, Stephen W. Holmgren, died in a tragic car accident on July 19, 1990. Steve's wife of approximately eight weeks, Gianna Holmgren, was named administrator of the estate and employed attorney John Slevin to represent her in the matter. Steve's parents, Leonard and Anne Holmgren, filed claims against their son's estate. The parents sought possession of a speedboat valued at approximately $25,000 and the repayment of monies loaned to their son for the purchase of his marital residence. The estate disputed the parents' claims and filed a petition for a citation to discover assets. The parents subsequently sought sanctions against attorney Slevin for an alleged breach of trust and bad-faith pleading. The trial court denied the parents' motions for sanctions, awarded possession of the boat to the estate, and ordered the estate to pay the parents $5,350 for monies loaned to their son in connection with the purchase of his residence. The parents appeal the court's decisions awarding the boat to the estate and denying their motion for sanctions. The estate cross-appeals part of the $5,350 award to the parents.

At a hearing on the estate's petition, the parents testified that after Steve graduated from college in the spring of 1986, he moved back to his parents' home, where he intermittently resided until November of 1989. During that time, Steve became employed at a

well-paying job and continued to live with his parents rent free. Shortly after Christmas of 1986, Leonard and Steve Holmgren went to Ted's Boatarama in Rock Island, Illinois, to look at speedboats. Steve picked out the boat he liked best and placed an order for a Checkmate speedboat, with accompanying Mericruiser motor and Shoreline trailer. Steve could not obtain financing for the boat in his own name so his parents bought the boat and financed the transaction through the Southpark National Bank of the Quad Cities, under a 48-month loan, with monthly payments of $417.34. After tax changes made interest on such loans nontax deductible, the parents refinanced the boat with a home equity mortgage. At all times after the purchase, the parents took a tax deduction for the interest payments made on the boat.

The parents further testified that they always owned the boat and that there was no agreement to convey it in whole or in part to Steve. They acknowledged that Steve frequently made monthly payments of $417.34, first to the Southpark National Bank, and after they refinanced, to Anne Holmgren. The parents stated, however, that these payments represented Steve's contribution to the family's expenses and were not for the boat.

The parents introduced into evidence documents showing that certificate of title to the boat was in their name, that they paid for some repairs and maintenance, and that they bought a cover and battery for the boat. They also introduced into evidence a document showing that after Steve had moved out of his parents' house, he made two payments to them of $417.34 each.

Gianna Holmgren testified that the boat was named "Freebird" after Steve's favorite song. She noted that a plaque in the boat read "Made especially for Steve Holmgren."

Over objection by opposing counsel that her testimony violated the rule against hearsay and the Dead Man's Act (Ill. Rev. Stat. 1991, ch. 110, par. 8—201), Gianna further testified that Steve's parents had taken out a loan for him on the boat and he was paying them back with interest. She noted that when he made payments on the boat he detached a sheet from a monthly payment book.

Rob Mindock, the best man at Steve's wedding, testified that Steve had frequently talked about having a boat, had showed him brochures of various boats, and then he finally bought one. Mindock stated that Steve told him that they were going to have a lot of fun with his toy, referring to the boat. He further testified that Steve had told him that he made regular payments to his parents for the

boat and that he owed about 10 more payments. The parents' counsel objected to Mindock's testimony on hearsay grounds and the objection was overruled by the trial judge.

Steve's father-in-law, Vivan Ragusa, testified regarding the boat transaction that Steve had told him that he could not obtain the necessary credit without his parents and that his parents received a tax deduction for the interest on the loan. Ragusa recalled that Steve stated that he wanted a truck to pull his boat and that he wanted to store it indoors for the winter. He further recalled that Steve wanted to trade it in for a bigger boat. The parents' hearsay objections to Ragusa's testimony were again overruled by the trial judge.

The estate introduced into evidence copies of checks that Steve wrote to Southpark National Bank for $417.34, a payment book for the boat found in Steve's possession at the date of his death, receipts from Ted's Boatarama with Steve's name, and checks written by Steve to Anne Holmgren for $417.34 after the loan was refinanced.

On appeal, the parents first argue that the trial court erred in awarding the boat to the estate. They point out that since they held title to the boat, a *prima facie* presumption of ownership arose in their favor. They contend that much of the evidence offered by the estate violated the rule against hearsay and that, absent the erroneously admitted evidence, the estate failed to offer enough evidence to overcome the presumption of ownership by the parents. Specifically, they complain that the testimony of Mindock, Ragusa, and Gianna Holmgren violated the hearsay rule. They also argue that the various documents offered by the estate violated the hearsay rule.

■■ Under Illinois law, a *prima facie* presumption of ownership arises from a certificate of title; however, this presumption may be rebutted by competent evidence of actual ownership. *Pekin Insurance Co. v. U.S. Credit Funding, Ltd.* (1991), 212 Ill. App. 3d 673, 571 N.E.2d 769.

Hearsay evidence is testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. (See *Hengels v. Gilski* (1984), 127 Ill. App. 3d 894, 469 N.E.2d 708; *Simon v. Plotkin* (1977), 50 Ill. App. 3d 603, 365 N.E.2d 1022.) A statement that is hearsay may be admissible if it satisfies an exception recognized by Illinois common law or an exception provided by

statute. (*People v. Frye* (1983), 113 Ill. App. 3d 853, 447 N.E.2d 1065.) A statement expressing the declarer's then existing state of mind, emotion, sensation, or physical condition, such as intent, plan, motive or design, mental feeling, pain and bodily health, is admissible as a hearsay exception. (E. Cleary & M. Graham, Handbook of Illinois Evidence §803.4, at 428 (3d ed. 1979).) However, the exception does not extend to the declaration of having done a past act, since to do so would effectively destroy the hearsay rule. See E. Cleary & M. Graham, Handbook of Illinois Evidence §803.6, at 431 (3d ed. 1979).

■ Examining the complained-of testimony, we find that much of it was inadmissible hearsay and did not fall under any exception. Some of the statements in question constitute the decedent's declaration of past events and for that reason are not admissible under the hearsay rule. Some of the statements reflect the existing state of mind, intent or plan of the decedent and are admissible as hearsay exceptions, if offered for those purposes. However, in this case, we are of the opinion that the statements that could reasonably be classified as expressing the decedent's state of mind, intent or plan were not offered for that purpose but were offered as evidence to rebut the presumption of title in the decedent's parents. In other words, they were offered to prove the truth of the matters contained therein, rather than to establish the state of mind of the decedent.

Specifically, we find that the trial court improperly admitted Mindock's and Ragusa's testimony that Steve showed them boat brochures, stated that he bought a boat and that he made payments to his parents for the boat. These statements appear to this court to be declarations of past acts and as such are inadmissible under the hearsay rule. The statement that the decedent owed 10 more payments could be admissible to reflect the state of mind of the decedent, but is not admissible to prove the truth of the matter asserted that he was the owner of the boat rather than his parents. Another statement made to Mindock and Ragusa that the decedent could not obtain the necessary credit is, in our opinion, a declaration of a past act and not admissible.

Decedent's statement that his parents received a tax deduction for the interest is hearsay on hearsay. The decedent could have no independent knowledge of his parents' tax deductions, but knows of them only because his parents told him or he viewed a tax return. In either event, it is hearsay and his statement to Mindock and/or Ragusa is likewise hearsay. This statement does not show the dece-

dent's state of mind and is offered to prove the truth of the matter asserted and is thus inadmissible.

Likewise we find that the court improperly admitted Gianna Holmgren's testimony that Steve's parents had taken out a loan on the boat and Steve was paying them back with interest. This testimony is hearsay and also violates the Dead Man's Act to the extent that Gianna Holmgren obtained this information from Steve. It is not admissible as to Gianna Holmgren's state of mind because Gianna Holmgren's state of mind is irrelevant in these proceedings.

Regarding the documents offered by the estate, we note that they are also inadmissible hearsay. While some of these records may have been admissible under the business records exception to the hearsay rule, they were not offered as such. No foundation was laid for these documents as business records and the estate's counsel on appeal concedes that the estate is not relying on that exception.

■ Examining the estate's evidence of ownership absent the erroneously admitted evidence, we find that there was not enough competent evidence to overcome the presumption of the parents' ownership of the boat. It was undisputed that at all relevant times the parents held title to the boat and maintained possession of it. Moreover, they testified that they never intended to convey the boat to Steve. Accordingly, we find that the trial court erred in awarding the Checkmate speedboat to the estate. Based on our review of the record, we are of the opinion that the trial court's decision awarding the Checkmate speedboat to the estate was against the manifest weight of the evidence. There was not sufficient competent evidence of actual ownership to rebut the presumption arising from the fact that title was held in the decedent's parents. Accordingly, we reverse that portion of the trial court's order which awarded the Checkmate speedboat to the estate.

The parents next argue that the trial court erred in denying their motion for sanctions against attorney Slevin. They contend that Slevin breached a fiduciary duty by not placing certain monies they sought in a trust fund upon receipt of their demand.

In that regard, the record shows that in October of 1989, Steve purchased a home in Peoria, Illinois, which ultimately was used as his marital residence. To effectuate the purchase, the parents had to sign the note and mortgage, and loan Steve money to cover the closing costs and other expenses. It was also necessary to add Leonard Holmgren's name to the title as a tenant in common. After Steve's death, the parents received correspondence from the administrator's attorney, John Slevin. Slevin informed the parents that

Steve's employer offered, as a fringe benefit, a residence repurchase plan which would purchase the home from Steve's estate, but only if Leonard would transfer his interest in the home to the estate. In his letter, Slevin explained as follows:

"In order to remove your name as tenant in common, it will be necessary for you to sign the enclosed Quit Claim Deed conveying the property to your son's estate. This will enable [Gianna] to give a Warranty Deed as administrator of the estate. Please accept this letter as assurance that any funds advanced by you for the initial down payment or any loan payment will be repaid in full at the time of closing of the sale and transfer to Prudential. Please let me know that amount."

In response to Slevin's letter, the parents signed and delivered the enclosed quit claim deed with a list of the amounts they expected to be repaid. The repayment list read as follows:

"$4,000—initial down payment

$1,350—closing costs

$892—the August, 1990 house loan payment"

The estate repaid the parents $892 for the August house payment, the month in which Steve died. The estate also acknowledged that the $1,350 in closing costs was a valid claim. A dispute arose, however, over the $4,000 claimed to have been loaned by the parents. Attorney Slevin sent a follow-up letter to the parents requesting "clarification" of the $4,000 down payment. Feeling that the proof offered by the parents was not sufficient, Slevin withheld payment pending resolution of this dispute. The parents subsequently asked the court to sanction Slevin. The parents claimed that Slevin breached the terms of his original "trust letter" by failing to place the disputed monies in a separate trust account. The parents further claimed Slevin should be sanctioned for denying the existence of the $4,000 debt. The parents contended that this denial constituted a bad-faith pleading.

At a hearing on the plaintiff's motion, Slevin produced a passbook account showing that the money was currently being held in trust for the benefit of the parents, pending a ruling by the court. Thereafter, the trial court denied the parents' motion for sanctions.

On appeal, the parents argue that attorney Slevin breached a fiduciary obligation to them by not immediately depositing $5,350 in a segregated trust fund upon their demand of payment. In support of this claim, the parents assert that as soon as they received attorney Slevin's "trust letter," Slevin owed them a fiduciary obligation to deposit the money in a trust account. The parents further argue

that the trial court erred in not sanctioning Slevin for filing a bad-faith pleading. The parents claim that Slevin's "general denial" that $4,000 was loaned to their son was made in bad faith.

■ Initially, we find that attorney Slevin improperly obtained the deed from the parents and then closed the deal when there was a dispute as to the amount owed the parents. However, we find that even though we disagree with Slevin's conduct in that regard, we do not find that sanctions are warranted under the circumstances. There is no allegation that the estate lacked the funds to pay the amount found due and owing. Nor is there any allegation that attorney Slevin deposited estate monies in his personal bank accounts or put estate monies to an improper use. While we hold that this is not an appropriate case for sanctions, we do order that the estate pay the parents interest on the amount withheld by Slevin, at the statutory rate, from the date of the closing on the re-purchase of Steve's marital residence until the money is finally paid.

Next, the estate cross-appeals the trial court's order awarding the parents the $4,000 they allegedly loaned their son as a down payment for the house.

■ We find that the estate's cross-appeal is without merit. The parents testified that they loaned Steve $4,000 as a down payment on the purchase of his house. The trial court heard the parents testify and obviously found their testimony convincing. Since the trial court, as trier of fact, was faced with the responsibility of determining the credibility of the witnesses and resolving questions of fact, we cannot say that its decision was against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Peoria County is reversed as to the ownership of the Checkmate speedboat and is affirmed as to all other matters.

Affirmed in part; reversed in part.

McCUSKEY and SLATER, JJ., concur.