First Division

June 21, 2004

No. 1-03-0375

MASHNI CORPORATION, by Farida Mashni; S. & T., INC., by Tae Hwan Han, SHELDON WILLIS, RONALD ISON, CHARLES JASKIEWICZ, EUGENE BRAMLETT, 

THOMAS V. NOWCZYK, DONNA J. YOUMANS, 

JUDY A. BROWN, and BELINDA RANSOM,

Plaintiffs-Appellees, 

v.

JAMES J. LASKI, Clerk of the City of Chicago, and THE BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, 

Defendants

(Barbara Stanley, Paul Uhl, Michael Roper, Richard Schumacher, Rand Ringgenberg, Anita Pike, and Louise Molnar,

Intervenors-Appellants).

)

)))))))))))))

))))

))

Appeal from 

the Circuit Court

of Cook County 

03 COEL 09

Honorable 

Nathaniel R. Howse, Jr., 

Judge Presiding

JUSTICE McBRIDE delivered the opinion of the court:

The Liquor Control Act of 1934 allows individual political precincts in cities of more than 200,000 inhabitants to hold binding referenda as to whether to prohibit the retail sale of alcoholic liquor within their geographic boundaries.  235 ILCS 5/9-2 (West 2002) (Act).  A "local option" referendum will be printed on a precinct's ballot when at least 25% of its legal voters sign a petition in favor of putting the question there.  235 ILCS 5/9-2 (West 2002).  The proper form of a local option petition is dictated by the general Election Code (10 ILCS 5/1-1 (West 2002)) (Code) and the Act.  235 ILCS 5/9-4 (West 2002).  In combination, the statutes mandate that each petition sheet include an affidavit from the circulator disclosing his or her address and certifying, among other things, that the signatures were signed in his or her presence and are genuine.  235 ILCS 5/9-4 (West 2002); 10 ILCS 5/28-3 (West 2002).  The addition of the petition circulator's affidavit is intended to ensure against fraud and protect the integrity of the political process by subjecting the circulator to the possibility of criminal prosecution.  See, 
e.g.
, 
Brennan v. Kolman
, 335 Ill. App. 3d 716, 720, 781 N.E.2d 644, 647 (2002).  The statutes further provide, however, that a person may revoke his or her signature from a local option petition.  235 ILCS 5/9-4 (West 2002); 10 ILCS 5/28-3 (West 2002).  The primary question on appeal is whether the circulator's affidavit provisions apply to petition signature revocation documents.  This is a matter of first impression.

Individuals opposed to the retail sale of alcoholic liquor in the 32nd precinct of the 48th Ward of the City of Chicago filed a local option petition with defendant city clerk James J. Laski, in anticipation of the election scheduled for February 23, 2003.  The precinct is in Chicago's Edgewater neighborhood.  At the time, there were only two retail liquor stores in Edgewater:  plaintiff Mashni Corporation was doing business at 1100 West Granville Avenue as Granville Food & Liquors, and plaintiff S&T, Inc. was doing business across the street at 1101 West Granville Avenue as Sun Liquors.  There were 427 registered voters in the precinct in the last general election, and the petition was supported by 197 signatures

An attorney representing the two retail liquor licensees and eight individual voters from the precinct subsequently filed 96 signature revocation documents with the city clerk.  The documents consisted of printed typewritten forms prepared by the attorney, which included a description of the petition at issue and blank spaces to be filled in by hand:

"
REVOCATION

TO: JAMES J. LASKI

CLERK OF THE CITY OF CHICAGO

CHICAGO, ILLINOIS  60602

The undersigned resident and legal voter of the 32nd Precinct in the 48th Ward of the City of Chicago, State of Illinois, signed (his or her) name as a signer on Sheet ___ Line ___ on the ___ day of ___, 2002, of the Petition consisting of 38 pages which has previously been filed in your offices on or about November 26, 2002.  The Petition proposed that the following question be placed on the ballot of the election to be held in Chicago, Illinois on February 25, 2003:

'SHALL THE SALE AT RETAIL OF ALCOHOLIC LIQUOR

 BE PROHIBITED IN THIS 32nd Precinct OF THE 48th Ward

 OF THE CITY OF CHICAGO?'

(as such precinct existed as of the last General Election)

In accordance with Chapter 235, Section 5/9-4, of the Illinois [Compiled] Statues concerning the Illinois Liquor Control Act of 1934, as amended, entitled 'Local Referendum,' I now exercise my right as a previous signer to hereby revoke my signature from said Petition.

NAME: _______________________________

ADDRESS: ____________________________

32nd Precinct of the 48th Ward

Chicago, Illinois

DATED:  December ___, 2002

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * 

A F F I D A V I T

STATE OF ILLINOIS   )

                                      )SS

COUNTY OF COOK    )

The undersigned Affiant,  under penalties provided by Section 1-109 of the Illinois Code of Civil Procedure, and after being first duly sworn upon oath, deposes and states that he/she is a citizen of the U.S. who is at least 18 years of age and that he/she affixes his/her signature below to certify that all the foregoing statements set forth are true and correct, in substance and in fact, except as to matters therein stated to be on information and belief; and as to such matters, the Affiant certifies a belief that they are true.

The Affiant further states that the signature on this sheet, containing the name and address of the above-identified registered and resident voter of the 32nd Precinct of the 48th Ward is genuine and that I witnessed the signature of the signer on the ___ day of December, 2002.

____________________________________

Signature of Circulator Making this Affidavit" 

We note that the form prepared by plaintiffs' counsel did not provide for the circulator to print his or her name and address and that all of the circulators' signatures are illegible.  In addition, none of the revocation documents was notarized.  The record on appeal suggests that the city clerk offers a local option petition signature revocation form which must be notarized.

The city clerk certified to defendant Board of Election Commissioners of the City of Chicago that the Edgewater petition was in proper form and contained a sufficient number of signatures to submit the proposition to the voters.  In the same letter, the city clerk also certified that "96 revocations purporting to be signed by persons who signed the aforementioned petition" had been filed in his office.

Plaintiffs then filed a complaint in the circuit court of Cook County challenging the validity of the petition, based in part on the revocation documents.  However, seven people who signed the petition intervened in the proceedings and argued the purported revocations should be stricken because they did not include the circulators' affidavits mandated by section 9-4 of the Act (235 ILCS 5/9-4 (West 2002)) and section 28-3 of the Code (10 ILCS 5/28-3 (West 2002)), and amounted to nothing more than inadmissible hearsay evidence.  The trial judge rejected these arguments, finding that circulators' affidavits were statutorily required for petition signatures, but not for revocation signatures. The judge indicated the statutes imposed no standards whatsoever on the form of  revocations, and that he would hear evidence from the intervenors, if warranted, that the revocation signatures were not genuine, and that this procedure would adequately safeguard the integrity of the election process.  It is unclear from the report of proceedings why the trial judge rejected the intervenors' hearsay argument.  The trial judge then personally compared the signatures on the revocation documents, the petition, and the voter registration cards, and found that 39 petition signatures had been revoked.  The trial judge struck 68 other signatures from the petition based on plaintiffs' other arguments.  After concluding that only 90 valid signatures supported the petition, which was less than the 25% or 107 signatures necessary, the judge enjoined the election board from including the referendum on Edgewater's ballot.  This court stayed enforcement of the order, and when Edgewater's voters considered the referendum, a majority of them were in favor of prohibiting retail alcohol sales in their community.

In this appeal, the intervenors contend the motion to strike the signature revocation documents was denied in error and that, as applied, section 9-4 of the Liquor Control Act (235 ILCS 5/9-4 (West 2002)) and section 28-3 of the Election Code (10 ILCS 5/28-3 (West 2002)) violated their state and federal constitutional rights to due process and equal protection.  Plaintiffs respond that the revocation documents actually exceeded what was required by law and that the intervenors are adding language to the statutes.  Plaintiffs suggest that anything objectively recognizable as "the withdrawal or recall of some power, authority, or thing granted" would qualify as a "revocation," and that section 9-4 of the Act exempts revocation documents from the hearsay rule.  235 ILCS 5/9-4 (West 2002).  Plaintiffs also contend that the statutes were constitutionally applied in this instance.

The interpretation of a statute is a question of law, subject to 
de novo
 review. 
 Jenkins v. McIlvain
, 338 Ill. App. 3d 113, 117, 788 N.E.2d 62, 64 (2003).  The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. 
Kaszubowski v. Board of Education of the City of Chicago,
 248 Ill. App. 3d 451, 457, 618 N.E.2d 609, 613 (1993).  Our duty when construing a statute is to ascertain and give effect to the legislature's intent.  
Harvel v. City of Johnston City
, 146 Ill. 2d 277, 282, 586 N.E.2d 1217, 1220 (1992).  "Courts should look first to the statutory language, as the best indication of the intent of the drafters [citation] and such intent is best determined by the plain and ordinary meaning of the statutory language.  [Citations.]"  
Kaszubowski
, 248 Ill. App. 3d at 457, 618 N.E.2d at 613.  In addition, "[w]e must assume that the legislature intended to enact a statute that was consistent with the constitution, giving effect to as much of [the] statute as is possible, consistent with the constitution, and construing the [statute] in light of the subject it addresses and its apparent objective."  
Kazubowski
, 248 Ill. App. 3d at 457, 618 N.E.2d at 613.

We find, contrary to the trial judge's ruling, that there are statutory standards for the form of petition signature revocations.  These standards are clearly stated in the Election Code.

The Election Code is the general election law of Illinois (10 ILCS 5/1-1 (West 2002)) and it applies to any election.  
Natt v. Suburban Cook County Tuberculosis Sanitarium District
, 407 Ill. 436, 95 N.E. 611, 615 (1950).  In the event a statute concerning a specific type of election is not detailed or complete, then the provisions of the general Election Code will govern as to the omitted procedures.  
Solomon v. North Shore Sanitary District
, 48 Ill. 2d 309, 319, 269 N.E.2d 457, 465 (1971).  

The Election Code controls the initiation and submission of any public question to be voted upon by the electors of Illinois, or any of its political subdivisions, districts, or precincts.  10 ILCS 5/28-1 (West 2002).  It describes the general procedures for initiating and submitting a question to public vote.  10 ILCS 5/1-3(15), 28-3 (West 2002).  It indicates, for example, that petition sheets must be a uniform size, that the public question must appear on each individual petition sheet, and that the space for signatures must appear below, rather than above, the question.  10 ILCS 5/28-3 (West 2002).  It also indicates that public question petitions are to be signed by registered voters from the affected political precinct and that their residential addresses must be written or printed out opposite their signatures.  10 ILCS 5/28-3 (West 2002).  The Code further provides: 

"[T]he bottom of each sheet of such petition shall [contain] a circulator's statement, signed by a person 18 years of age or older who is a citizen of the United States, stating the street address *** as well as the county, city, *** and state; certifying that the signatures on that sheet of the petition were signed in his or her presence and are genuine, and that to the best of his or her knowledge and belief the persons so signing were at the time of signing the petition registered voters of the political *** precinct *** in which the question of public policy is to be submitted and that their respective residences are correctly stated therein.  Such statement shall be sworn to before some officer authorized to administer oaths in this State."  10 ILCS 5/28-3 (West 2002).

"It is well established that the requirement that a circulator appear before an appropriate official to swear his oath is a mandatory one under section 28-3 [of the Election Code]."  
Shipley v. Stephenson County Electoral Board
, 130 Ill. App. 3d 900, 906, 474 N.E.2d 905, 910 (1985).  The circulator must also provide his or her address in order to ensure the integrity of the electoral process.  
Sakonyi v. Lindsey
, 261 Ill. App. 3d 821, 825, 634 N.E.2d 444, 447 (1994).   Disclosure of the circulator's address "enables the [Electoral] Board to locate her, question her about the signatures, and hold her responsible for her oath."  
Sakonyi
, 261 Ill. App. 3d at 826, 634 N.E.2d at 447.  The Election Code specifies that "[w]hoever forges any name of a signer upon any petition shall be deemed guilty of a forgery, and on conviction thereof, shall be punished accordingly."  10 ILCS 5/28-3 (West 2002).  In addition, "it is assumed by her sworn statement that the circulator is subjecting herself to possible perjury prosecution.  Thus, the circulator's affidavit requirement is considered a meaningful and realistic method of eliminating fraudulent signatures and protecting the integrity of the political process."  
Sakonyi
, 261 Ill. App. 3d at 826, 634 N.E.2d at 447.

Article 9 of the Liquor Control Act applies specifically to public questions regarding the retail sale of alcoholic liquor.  235 ILCS 5/9-2, 9-4 (West 2002).  The Act spells out the appropriate phrasing of a local option petition question and indicates that a list of the affected liquor licensees must appear on each petition sheet.   235 ILCS 5/9-2, 9-4 (West 2002).  The Act also specifies that at least 25% of the legal voters must petition to vote their precinct dry before the question will appear on the precinct's ballot.  235 ILCS 5/9-2 (West 2002).

Both the Code and the Act anticipate that an individual may wish to revoke his or her signature from a public question petition.  The election statute provides that "no signature shall be revoked except by revocation presented or filed with the [municipal clerk]" (10 ILCS 5/28-3 (West 2002)), and the liquor control statute establishes a deadline, stating that "[n]o signature shall be revoked except by a revocation filed within 20 days from the filing of the petition with the [municipal] clerk."  235 ILCS 5/9-4 (West 2002).  

The statutes also provide for interested parties to object to the validity of petitions filed with the city clerk, and establish procedures and deadlines for objecting.  See, 
e.g.
 10 ILCS 5/28-4 (West 2002); 235 ILCS 5/9-4 (West 2002).  While other types of election disputes are presented to an electoral board, the Code mandates that objections to the validity of public question petitions be resolved in the circuit court.  10 ILCS 5/28-4 (West 2002).  The Code also plainly states that "[n]o signature shall be valid or be counted in considering the validity or sufficiency of [a public question petition] unless the requirements of [section 28-3 of the Election Code] are complied with."  10 ILCS 5/28-3 (West 2002).

Reading these provisions together, we conclude that the revocation documents filed in this instance were deficient and, therefore, did not qualify as "revocations."  We read section 9-4 of the Act and 28-3 of the Code to mean that the individuals who purportedly circulated through the Edgewater community collecting signatures from voters who wished to revoke their signatures from the filed local option petition were required to complete the circulator's affidavit described in section 28-3 of the Code.  The legislature clearly intended that no signature would be considered in a challenge to the validity or sufficiency of a petition unless it was accompanied by an affidavit from the individual who collected the signature.   The documents the plaintiffs relied upon lacked this essential feature and, therefore, should not have been considered by the trial judge.  The intervenors point out that the timing and procedures under which the local option petition revocation documents were initiated actually made the revocation documents more susceptible to fraud than the petition itself.  The revocation proponents faced the difficult tasks of tracking down the small group of voters in the precinct who had signed the petition and persuading those individuals to change their decision about the petition.  They were also forced to collect and file any revocation signatures within a mere 20 days.  Furthermore, to the untrained eye, a signature copied from a petition might be indistinguishable from a genuine endorsement, and the revocation proponents had a sample of every petition signature they were hoping to void, since anyone who pays the costs of copying is entitled to a copy of any filed local option petition.  235 ILCS 5/9-4 (West 2002).  If we were to read the affidavit requirement out of the statutory scheme, we would be suggesting that revocation signatures are less susceptible to fraud than the initial petition signatures.  This would be contrary to the legislature's apparent objective for adopting the affidavit requirement.

In addition, we are not persuaded by plaintiffs' contention that the circulators' verifications under penalty of perjury pursuant to section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2002)) were a sufficient substitute for the notarization mandated by section 9-4 of the Act (235 ILCS 5/9-4 (West 2002)) and section 28-3 of the Code (10 ILCS 5/28-3 (West 2002)).  Section 1-109 provides that whenever the Code of Civil Procedure requires a document to be notarized, then verification, under penalty of perjury, will suffice.  735 ILCS 5/1-109 (West 2002)).  Section 1-109 does not indicate, however, that verification is an acceptable substitute when a statute other than the Code of Civil Procedure requires notarization.  Section 1-109 makes no reference to the liquor control or election statutes, and has no relevance in petition challenges.  Furthermore, since the verifications did not include the circulators' names and residential addresses and the circulators' signatures were illegible, the verifications were essentially anonymous.  The statements did not enable the electoral board to locate the circulators, question them about the signatures, and hold them accountable.

We find that there were clearly stated statutory standards for revocation documents and that the trial judge erroneously disregarded these standards.

The intervenors also contend that the trial judge erred by accepting the 96 documents tendered by plaintiffs as evidence that certain petition signatures had been revoked, when these documents were nothing more than inadmissible hearsay.  We agree.  "Hearsay evidence is testimony in court or written evidence of a statement made out of court, such statement being offered as an assertion to show the 
truth of 
matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter."  
In re Estate of Holmgren
, 237 Ill. App.3d 839, 842-43, 604 N.E.2d 1092, 1095 (1992).  Hearsay evidence is not admissible unless it satisfies an exception recognized at common law or provided by statute.  
In re Estate of Holmgren
, 237 Ill. App.3d at 842-43, 604 N.E.2d at 1095.  We find that the revocation documents were hearsay and did not fall within any exception to the hearsay rule, and, thus, were inadmissible evidence.  The documents were offered as evidence of the facts that:  a person who signed the petition subsequently revoked his or her signature from the petition by signing the revocation document, the person was a registered voter in the 32nd precinct of the 48th Ward and residing at the address stated, and that a third party witnessed the voter sign the document and was attesting to the genuineness of the voter's signature. 

We find no merit in plaintiffs' contention that "an obvious basis" for admitting the revocation documents was the "residual" or catch-all exception to the hearsay rule embodied in Federal Rule of Evidence 803(24)  (Fed R. Evid. 803(24)).  The federal catch-all exception was actually recodified some nine years ago under a different rule number, Rule 807 (
United States v. Hall
, 165 F.3d 1095, 1110 n.7 (7th Cir. (1999)), and provides that a statement "having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of [the federal] rules and the interests of justice will best be served by admission of the statement into evidence."  Fed. R. Evid. 807.  Although the Illinois Supreme Court has adopted some of the federal courts' evidentiary rules on an 
ad hoc
 basis, it does not appear to have adopted the catch-all exception to the hearsay rule.  Plaintiffs cite the federal rule, but no authority indicating this state's courts may employ it.  See 
Casey v. Penn
, 45 Ill. App. 3d 573, 583, 360 N.E.2d 93, 100 (1977) (indicating Illinois has not adopted the federal courts' rules), 
Wilson v. Clark
 84 Ill.2d 186, 195, 417 N.E.2d 1322, 1327 (1981) (adopting Federal Rules 703 and 705).  Furthermore, there is no indication that plaintiffs or the trial judge relied on the federal rule.  As indicated earlier, it is unclear from the transcript of oral arguments why the trial judge concluded it would be appropriate to admit the hearsay documents into evidence.  Plaintiffs have also suggested that the legislature created a statutory exception to the hearsay rule for revocation documents, but they cite only generally to section 9-4 of the Act, and we were unable to find any language there to that effect.

Plaintiffs bore the burden of proof that the petition was invalid.  
Young v. Marcin
, 66 Ill. App. 3d 576, 578, 384 N.E.2d 404, 406 (1978).  The term "burden of proof" refers to the plaintiffs' burden of both producing evidence and persuading the trier of fact that certain facts are true.  
Ambrose v. Thornton Township School Trustees
, 274 Ill. App. 3d 676, 680, 654 N.E.2d 545, 548 (1995).  No competent evidence of the crucial facts was presented to the trial judge.  Accordingly, we find that the trial judge's decision to strike 39 signatures from the petition because they had been subsequently revoked was against the manifest weight of the evidence, and we reverse that portion of the trial judge's order
.  
In re Estate of Holmgren
, 237 Ill. App.3d at 842, 604 N.E.2d at 1095.

The intervenors' third and final argument on appeal is that as applied by the trial judge, the signature revocation process provided by the Act and the Code violated the due process and equal protection guarantees of the state and federal constitutions. Since we have determined that the statutes specified the proper form of petition signature revocations and that the trial judge failed to properly apply these standards, we will not address these constitutional arguments.  
Anagnost v. Layhe
, 230 Ill. App. 3d 540, 543, 595 N.E.2d 109, 110 (1992).

The trial judge determined that only 90 valid signatures supported the petition.  Based on the above analysis, we conclude that 39 valid signatures were improperly stricken from petition.  Accordingly, 129 valid signatures, which was far in excess of the 107 signatures necessary, were on file with defendant board of election commissioners.  Plaintiffs failed to meet their burden of proving that the petition was invalid.  The order appealed from is reversed.

Reversed.

O'MALLEY, P.J. and McNULTY, J., concur.