MASHNI CORPORATION, by Farida Mashni, *et al.*, Plaintiffs-Appellees, v. THE BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF CHICAGO, Defendant-Appellant (Barbara Stanley *et al.*, Interveners-Appellants).[1]

First District (1st Division)   Nos. 1—04—3619, 1—04—3631 cons.

Opinion filed November 28, 2005.—Rehearing denied January 20, 2006.

---

[1]Although this case should normally be captioned with the lowest consolidated case number, we believe the caption in No. 1—04—3619 is erroneous. It identifies the plaintiffs as Mashni Corporation, by Farida Mashni, S&T, Inc., by Tae Hwan Han, Sheldon Willis, Fred P. Morrow, Steven Heinold, Ronald Ison, Antaneshia Briggs, Charles Jaskiewicz, Eugene Bramlett, Thomas V. Nowczyk, Donna J. Youmans, Judy A. Brown, and Belinda Ransom. However, there is no complaint in the record listing these parties as plaintiffs challenging the election; the only relevant complaint lists the plaintiffs identified in the No. 1—04—3631 caption. The plaintiffs listed in No. 1—04—3619, with the exception of Morrow, Heinold and Briggs, were the plaintiffs that challenged the petition to actually put a proposition on the ballot, which challenge has previously been appealed to this court. *Mashni Corp. v. Laski*, 351 Ill. App. 3d 727, 814 N.E.2d 879 (2004). We believe that Interveners mistakenly utilized this caption, with the addition of the three other individuals, in their notice of appeal in this case. We also note that both the Board and the Interveners' briefs utilize the caption of No. 1—04—3631. Accordingly, we will utilize the caption of No. 1—04—3631 since those are the plaintiffs identified in the complaint on record.

James M. Scanlon & Associates, P.C., of Chicago (James M. Scanlon and Joan T. Agnew, of counsel), for appellant.

Michael E. Lavelle and William J. Cooley, both of Chicago, for appellees.

Mayer, Brown, Rowe & Maw, LLP, of Chicago (Patricia F. Sharkey, Marc Kadish, and Russell R. Eggert, of counsel), for intervenors-appellants.

JUSTICE BURKE delivered the opinion of the court:

Defendant Board of Election Commissioners of the City of Chicago (Board) and Interveners Barbara Stanley and Paul Uhl[2] appeal from an order of the circuit court invalidating a local option election held

---

[2]The Board and Interveners will be collectively referred to as defendants where applicable.

on February 25, 2003, in the 32nd Precinct of the 48th Ward that prohibited the sale of alcoholic beverages at retail in that precinct. On appeal, defendants contend that the trial court erred in holding that the transposition of the ward and precinct numbers in a Chinese translation on the local option ballot failed to substantially comply with the requirements of section 9—6 of the Illinois Liquor Control Act of 1934 (Act) (235 ILCS 5/9—6 (West 2004)).[3] For the reasons set forth below, we affirm in part and reverse in part.

## STATEMENT OF FACTS

On February 25, 2003, a local option election was conducted in the 32nd Precinct of the 48th Ward to determine whether the sale of retail alcoholic liquor should be prohibited. The ballot was printed in English, Spanish, and Chinese. The Chinese translation, with respect to the sale of alcohol, used the term *xiǎo shòu*, as opposed to the term *ling shòu*. The Chinese translation also transposed the precinct and ward numbers, *i.e.*, 48th Precinct and 32nd Ward. The ballot also contained a section entitled, "Description of Area to Be Affected," which gave a common description, using street boundaries, addresses, etc. to identify the area affected in nonlegal terms. This description, too, was in English, Spanish, and Chinese.

On March 14, plaintiffs Mashni Corporation, by Farida Mashni, S&T, Inc., by Tae Hwan Han, Charles Jaskiewicz, Michele Parisi, Belinda Ransom, James A. Buckle, Leonard LeCour, Ronnie Lindsey, Sharrod Graham, Sheldon Willis, Ron Ison, Arii Rowling, Donald Smith, Donna Youmans, Lisa Hunter, Jeffory Baker, William Kelley, John Mitchell, Thomas Nowaczyk, Lisa Ruth and Anthony Macklin, voters and two liquor license holders in the 32nd Precinct,[4] filed a complaint contesting the validity of the election, alleging that the bal-

---

[3]The Board, in its brief, also argues that the trial court properly concluded that the failure to include the term "at retail" in the Chinese translation on the ballot substantially complied with the requirements of the Act and that the trial court properly concluded that the ballot otherwise substantially complied with the statutory form (identified as the *Brooks* issue based on *Brooks v. Board of Election Commissioners*, 334 Ill. App. 3d 472, 778 N.E.2d 173 (2002)). We do not address the *Brooks* issue since it was not included in the Board's notice of appeal, it was not a ruling against the Board, the Board states, in its brief, that it is only appealing the part of the trial court's judgment with respect to the transposition, the Interveners state that the transposition issue is the only issue appealed from, and plaintiffs state that the *Brooks* issue is not at issue here. With respect to the "at retail" issue, we address that issue for the reasons discussed below.

[4]None of the plaintiffs are able to read Chinese as averred in their complaint.

lot was "inherently vague and ambiguous" because it contained both substantive defects and the form of the ballot was unlawful and, therefore, failed to comply with section 9—6 of the Act. With respect to the substantive violations, plaintiffs alleged:

"9a. The Board used an English question that asks whether alcohol shall be prohibited specifically at retail, as the statute requires, and an invalid Chinese question that asks whether alcohol shall be prohibited generally, whether at retail or wholesale.

b. The Board used an English question that asks whether alcohol shall be prohibited in the 32nd Precinct of the 48th Ward, as the statute requires, and an invalid Chinese question that asks whether alcohol shall be prohibited in the 48th Precinct of the 32nd Ward."

Plaintiffs further alleged that the Board utilized an uncommon Chinese language, a simplified version, which is understood only by junior generations of Chinese people, not senior generations (paragraphs 10 and 11). Plaintiffs also alleged numerous defects in the form of the ballot, which we need not set forth. The complaint contained a count II that sought to void the election on the basis that the trial court had ordered the Board to remove the proposition from the ballot on February 14.[5]

On March 26, Stanley and Uhl filed a petition to intervene, which the trial court granted. On April 23, the Board filed its answer and affirmative defenses and, on May 2, the Interveners did the same. The Interveners also filed a motion to dismiss or strike count II because this issue was pending before the appellate court. The Board was later granted leave to join this motion. Thereafter, plaintiffs responded to it. On May 21, plaintiffs filed a motion to dismiss the Board and Interveners' affirmative defenses. On May 30, the trial court granted defendants' motion to dismiss count II.

On June 13, the Board and Interveners responded, separately, to plaintiffs' motion to strike their affirmative defenses. Thereafter, plaintiffs replied. On July 8, the trial court granted plaintiffs' motion to strike defendants' affirmative defenses with the exception of the affirmative defense regarding plaintiffs' lack of standing.

On August 20, 2004, plaintiffs filed a motion for summary judgment, contending that two translation errors occurred in the ballot which rendered the election invalid as a matter of law. On August 23, defendants filed their joint motion for summary judgment, noting that the issues before the court had been limited by plaintiffs. Specifically,

---

[5]This order was appealed and, on February 19, we stayed enforcement of the trial court's February 14 order. As such, the election proceeded. Ultimately, on June 21, 2004, we reversed the trial court's decision enjoining the election. *Mashni Corp.*, 351 Ill. App. 3d 727, 814 N.E.2d 879.

paragraphs 10 and 11 of plaintiffs' complaint were no longer at issue. Additionally, plaintiffs indicated that they would not present evidence with respect to paragraphs 12 to 17 (*Brooks* issue), but reserved the right to argue these errors. Thus, according to defendants, two questions of law were presented:

"1. Does the translation of the English words 'for sale at retail' using the Chinese character *xiao shou*, which is literally translated as 'for sale,' result in a ballot which is invalid as a matter of law and requires the voiding of the local option election?

2. Does the transpositions of the ward and precinct numbers at the top of the ballot and in the text of the proposition result in a ballot which is invalid as a matter of law and requires the voiding of the local option election?"

Defendants attached the deposition of their expert, Dr. Richard Gu, to their motion.

On October 6, the trial court held a hearing on the respective motions. The trial court concluded that the "at retail" issue involved a question of fact since two different experts gave different opinions and, thus, required a trial. With respect to the transposition issue, the trial court reserved ruling. The trial court also indicated that, although it was ready to rule on the *Brooks* issue, it would take the matter under advisement until it ruled on the other issues.

Trial commenced on November 10. Hanelore Mui, a freelance interpreter in Cantonese and Mandarin, testified as plaintiffs' expert. According to Mui, the ballot asks: "[T]he sale of liquor in general should it be prohibited in the 32nd, in the 48th Precinct of 32nd District in Chicago City?" It was Mui's opinion that the Chinese translation has "omissions of important meaningful words" and was not a correct translation. It was further her opinion that the transposition of the ward and precinct numbers "could be easily confusing" because people might think they were looking at the wrong ballot. However, she acknowledged that if a voter read the description of the area affected, "they can easily solve that problem." Mui then indicated there were two Chinese characters for "at retail," but did not identify what they were. When asked if the character used for the term "sale" in the ballot would include wholesale sales, Mui responded, "I would assume it does."

On cross-examination, Mui stated that she had formal education in Chinese up to a junior high equivalency and was certified by Berlitz. Mui also stated that the translation was not accurate because it left out the term *ling shòu*, which was a more accurate term for "at retail." Again, she stated there was another Chinese character for "at retail," but did not identify it. Mui then admitted that *ling shòu* actu-

ally means "retail sale," not "sale at retail," but stated it could also mean the latter. Mui further stated that "retail" can have multiple meanings, *e.g.*, price, quantity, where sold, and that the same was true with respect to the term "sale."

Mui indicated that if she was interpreting a legal document, which a ballot is, she would need to provide the exact meaning of the original without losing meaning or omission, whether or not the general population would understand the translation.[6] Mui admitted that the relevant language here could be translated to *xiǎo shòu*, but it was her opinion that *ling shòu* was the better character to show the difference between retail sales and wholesale. With respect to the transposition, Mui admitted that the common description in the ballot could easily tell voters what area was affected and that the language used in that description was accurate and would be easy for Chinese readers to understand. Plaintiffs then rested.

Dr. Richard Gu, who has studied and taught Chinese/English translation for 11 years at Northwestern and 6 years in China, testified as defendants' expert. According to Gu, a good translation needs to be reliable, loyal to the original language, and enable the readers to understand it. Gu stated that it was important, in translating, to know something about the audience because different terms are used for the general public versus specialized audiences. It was Gu's belief that plain or simplified Chinese was preferable for use with the general public. Gu further stated that there was always a choice of characters to use in translating, and it was his belief that one needed to use the best, most suitable for the purpose. It was Gu's opinion that *xiǎo shòu* was the best translation for "sale at retail" because the audience would understand it. Specifically, Gu indicated that when looking at the ballot, it would be clear to the voter "it was talking about voters who live in this area who are thinking about whether liquor stores should be closed or not" and that the ballot was referring to sales at retail. It was further Gu's belief that *ling shòu* was not a commonly used Chinese term and that, since *xiǎo shòu* already meant sale, there was no further clarification needed. Specifically, according to him, the "meaning is clearly there already. No one would misunderstand it." Gu further stated that if the word for "retail" was added to the translation, fewer people would be able to understand it.

Dr. Gu further indicated that the Chinese language has more than 40,000 characters and only the most commonly used characters are

---

[6]This statement is unfathomable given that the entire reason the proposition was translated was to enable the general population of Chinese people to understand it.

generally taught, which consists of approximately 3,000. According to Gu, *xiāo shòu* was much more commonly used and generally taught than *ling shòu*. Specifically, *ling shòu* was not generally taught to people, not even at the college or graduate level. Thus, *xiāo shòu* would reach a wider range of people. Gu stated that *xiāo shòu* was generally understood to mean retail sale. In this regard, Gu indicated there was a Chinese word for "retail store," but it was not commonly used and people just say "store." The same was true with respect to "retail price." Although Gu acknowledged *xiāo shòu* could also mean wholesale, according to him, it was not generally understood that way. It was further Gu's belief that *ling shòu* did not more clearly convey the idea of retail sale because the general public would find that term hard to understand.

With respect to the transposition, Dr. Gu agreed that the numbers were reversed, but did not believe this would cause confusion to Chinese voters since it was a "very, very common error" and "common, common, common practice" in translating between English and Chinese. Gu stated that the description included on the ballot would identify the area being referred to and that which would be affected by the vote.

On cross-examination, Dr. Gu indicated that Chinese people were always on guard when numbers were at issue. Gu stated that when a voter would see the numbers on the ballot, he would see the common problem and look at them longer. However, it was his belief that voters would not rely on the official numbers used in the ballot.

With respect to *xiāo shòu* and *ling shòu*, Dr. Gu stated that the frequency of usage was much different. Specifically, *xiāo shòu* was used .00061 times per 10,000 and *ling shòu* was only used .00038 per 10,000. According to him, this was a very large difference. Gu further stated that the failure to use the character for "retail" did not broaden the scope of the ballot proposition, but merely made it so people could understand it. Again, although he admitted that *xiāo shòu* could include both retail and wholesale, Gu stated that the general public would plainly understand *xiāo shòu* to mean retail sales. According to Gu, when a Chinese reader read the ballot, he or she would have the same understanding as his or her English counterparts because *xiāo shòu* includes the concept of retail and the general public would not think about wholesale sales when reading the question.

The trial court then rendered its decision. With respect to the *Brooks* issue, the trial court granted summary judgment in favor of defendants, finding there was substantial compliance with the statute in the form and layout of the ballot.

With respect to "at retail," the court found that, based on Dr.

Gu's testimony, the translation substantially complied with the statute and gave the voters a clear opportunity "to express their opinion as to whether or not to vote up or down." Thus, the court concluded that "the voters were given a clear and meaningful choice to vote for or against the proposition."

Lastly, with respect to the transposition, the court first set forth the five cases it believed were relevant to the issue, but found that none of them contained anything stating that a verbalization of the area covered "trumps" everything, as defendants maintained. The court agreed with plaintiffs that none of the cases stood for the proposition that, if the precinct and ward numbers were transposed, that was okay.

The trial court then noted that, while the ballot transposed the ward and precinct in two different places, it also included a verbalization of the proper street addresses. According to the court, the question was whether the transposition "put a Chinese-speaking person in a different position *** than it does an English-speaking and a Spanish-speaking person," which according to the court was "a case of first impression." The court concluded that the ballot did not substantially comply with section 9—6 "based upon *** the transposition of the ward and precinct and the fact that a Chinese-speaking person is put in a different position based upon the ballot that was submitted, than the English and Spanish-speaking people." Accordingly, the trial court held the election invalid and entered judgment in favor of plaintiffs. On December 9, the Board and Interveners filed separate notices of appeal with respect to the trial court's decision in connection with paragraph 9(b) of plaintiffs' complaint.

## ANALYSIS

■ Pursuant to section 9—6 of the Act, a local proposition to ban the sale of alcohol "shall be in substantially the following form":

| Shall the sale at retail of alcoholic liquor (or alcoholic liquor other than beer containing not more than 4% of alcohol by weight) (or alcoholic liquor | YES | |
| containing more than 4% alcohol by weight in the original package and not for consumption on the premises) be prohibited in (or at) ...............? | NO | |

Section 9—1 of the Act provides that the proper name of the precinct, *inter alia*, should be inserted in the blank. 235 ILCS 5/9—1 (West 2004). After setting forth the statutory form, section 9—6 provides that the "proposition ballot shall also contain a common description of the precinct in plain and nonlegal language." 235 ILCS 5/9—6 (West 2004). "Plain and nonlegal language" is defined in another section of the Act, involving the petition to put such a referendum on a ballot, as being "by reference to streets, natural or artificial landmarks, addresses." 235 ILCS 5/9—4 (West 2004).

■ When a special statute dictates the form of a ballot, as is the case here, the ballot must substantially comply, not exactly comply, with the statutory mandate or the election is deemed void. *Brooks*, 334 Ill. App. 3d at 476. To determine whether there has been substantial compliance, the question is whether the voter had "a 'clear and understandable statement of the alternatives before him.' [Citation.]" *Brooks*, 334 Ill. App. 3d at 477. "The focus is on the existence of a meaningful choice for the voters." *Krauss v. Board of Election Commissioners*, 287 Ill. App. 3d 981, 984, 681 N.E.2d 514 (1997). " 'A ballot is sufficient if the voter has a clear opportunity to express a choice either for or against it.' [Citation.]" *Brooks*, 334 Ill. App. 3d at 477. With respect to the meaning of substantial, it has been stated:

> " 'The word "substantial,["] as ordinarily used, means essential, material or fundamental. A substantial copy of the form of the ballot designated in the statute must evidently be one that contains the essence of the form in the statute,—one giving the correct idea but not necessarily the exact expressions in the statutory form. The words of the statute, "The ballots at said election shall be substantially in the following form," necessarily convey the idea that the ballot to be used or voted by the voters is not required to be an accurate or exact copy but one which embodies or contains the substance or main features of the ballot found in the statute. The legislature evidently did not intend that every word of the statutory form should be found in the form furnished the voter, and if enough of the words found in the statutory form, coupled with other apt words, are printed on the ballot furnished to the voter that will mean the same thing to all of the voters as the words used in the statutory form, the statute will be substantially complied with.' [Citation.]" *People ex rel. Davis v. Chicago, Burlington & Quincy R.R. Co.*, 48 Ill. 2d 176, 183, 268 N.E.2d 411 (1971).

Moreover, it has been held that "[t]he substance of a public measure is adequately set forth if the ballot gives a fair portrayal of the chief features of the proposition in words of plain meaning, so that it can be understood by persons entitled to vote." *Smith v. Calhoun Community Unit School District No. 40*, 16 Ill. 2d 328, 335, 157 N.E.2d 59 (1959).

Not every deviation from the statutory form will render an election void; rather, "to have such effect the deviation must be in a matter of substance." *Davis*, 48 Ill. 2d at 181. Moreover, if there is a deviation in the ballot, courts consider whether it "was misleading or confusing to the voters." *Brooks*, 334 Ill. App. 3d at 477. Where there is no "likelihood that the deviation in wording confused the voters or obstructed them in voting either for or against the proposition, in accordance with their inclinations," which factors are considered "more relevant than, and preferable to, the elevation of form over substance," no substantial deviation will be found to exist. *Davis*, 48 Ill. 2d at 182. In determining whether a ballot complies with the statutory form, "we must ultimately be guided by the statutory intent [citations], both in determining what constitutes compliance with the statute and in determining the effect of noncompliance." *Davis*, 48 Ill. 2d at 182. The intent of the Act is set forth in section 1—2, *i.e.*:

> "This Act shall be liberally construed, to the end that the health, safety and welfare of the People of the State of Illinois shall be protected and temperance in the consumption of alcoholic liquors shall be fostered and promoted by sound and careful control and regulation of the manufacture, sale and distribution of alcoholic liquors." 235 ILCS 5/1—2 (West 2004).

Whether there is substantial compliance is a question of law for the court to determine. *Krauss*, 287 Ill. App. 3d at 984.

## I. Transposition

The Board first contends that the trial court erred in finding that the transposition of the ward and precinct numbers did not substantially comply with section 9—6 since it violated the letter and spirit of the Act, imposed a strict, not substantial, compliance requirement, and applied an improper standard, *i.e.*, "put in a different position." According to the Board, there was no evidence that the Chinese voters were prevented from exercising their right of suffrage based on the transposition or that the result of the election was not fairly ascertained. The Board further maintains that, while the trial court applied the correct substantial compliance standard to the "at retail" issue, it failed to apply that standard to the transposition issue. Specifically, the Board argues that the trial court made no finding that the transposition denied Chinese voters a clear and meaningful choice to vote for or against the proposition, particularly where the common description, which both experts admitted was accurate, was included on the ballot.

The Interveners contend that the trial court's decision with respect to the transposition was incorrect as a matter of law and inconsistent with the intent of the Act because the trial court applied a strict

compliance standard and failed to consider whether the transposition affected the voters' right to make a choice. With regard to cases relied upon by the trial court, the Interveners maintain that when three of them were decided, section 9—6 contained different language and did not require the inclusion of a common description. However, according to the Interveners, subsequent to these decisions, the legislature amended section 9—6 and we may presume that this amendment indicated the legislature's intent to remedy the confusion and vagueness caused by reference to precinct and ward numbers.

Plaintiffs contend that the trial court properly found the election invalid on the basis of the transposition error. According to plaintiffs, this error occurred two times on the ballot and did not convey the correct information to the voters and, thus, the Chinese voters voted on a different question. Plaintiffs further maintain that the common description did not cure the error.

None of the cases relied upon or referred to by the trial court are particularly helpful. Briefly, these cases involved the following facts and holdings. In *Havlik v. Marcin*, 132 Ill App. 2d 532, 270 N.E.2d 189 (1971), the Act required that the proper name of the precinct be inserted in the blank on the ballot and, there, the affected area was identified as " 'this precinct,' " which the plaintiffs maintained was not the proper name. *Havlik*, 132 Ill. App. 2d at 536. The *Havlik* court concluded that the use of "this precinct" did substantially comply with the statute and "did enlighten the voters as to the proposition before them" and "gave the voter a clear and understandable statement of the alternatives" before them. *Havlik*, 132 Ill. App. 2d at 536.

In *Huguley v. Marcin*, 39 Ill. App. 3d 230, 349 N.E.2d 564 (1976), the plaintiffs, voters from the 3rd Precinct of the 7th Ward, challenged an election banning the sale of alcohol in that precinct on the basis the ballot identified the area as the 3rd Precinct of the 8th Ward. *Huguley*, 39 Ill. App. 3d at 231. The ballot contained an explanation that the 3rd Precinct of the 8th Ward now lies in the 7th Ward, but that the precinct boundaries had not changed. *Huguley*, 39 Ill. App. 3d at 231. The statute at that time required the precinct affected by the vote to be identified as it " 'existed as of the last General Election.' " *Huguley*, 39 Ill. App. 3d at 231. The court concluded that there were no defects in the ballot. *Huguley*, 39 Ill. App. 3d at 233.

In *Love v. Marcin*, 47 Ill. App. 3d 715, 365 N.E.2d 100 (1977), the plaintiffs challenged a ballot banning the sale of alcohol in their precinct, maintaining that, while the ballot contained the legal or proper name of the precinct, it failed to include a description of the precinct. *Love*, 47 Ill. App. 3d at 716. The court disagreed, noting that the statute did not require that the description of the boundaries of

the precinct be included, only that the legal designation of the precinct be included. *Love*, 47 Ill. App. 3d at 718. In *Love*, the legal designation, the 40th Precinct of the 29th Ward, was included on the ballot and, therefore, complied with the statutory form. *Love*, 47 Ill. App. 3d at 717-18.

In *Quarles v. Kozubowski*, 154 Ill. App. 3d 325, 507 N.E.2d 103 (1987), a petition to put a referendum on a ballot banning the sale of alcohol was at issue and there was only one sentence in the case with respect to an alleged error in the description of the precinct boundaries, *i.e.*, that the sides of the street (presuming north or south and/or east or west) were omitted. *Quarles*, 154 Ill. App. 3d at 334. The court found the description sufficient since the record failed to demonstrate that anyone entitled to vote was not able to or that anyone not entitled to vote did. *Quarles*, 154 Ill. App. 3d at 334.

Lastly, *Armond v. Sawyer*, 205 Ill. App. 3d 936, 563 N.E.2d 900 (1990), involved the revocation of a person's liquor license based, *inter alia*, on a void referendum that had taken place in 1974 (the vote at issue in *Huguley*) Clearly, because the referendum was ruled proper in *Huguley*, there is nothing in this case with respect to the propriety of identifying the precinct. Certainly, none of these cases assist us in addressing the issue before this court.

■ We find that the trial court erred in invalidating the election on the basis of the transposition. As noted by the court in *Brooks*, relying on the trial court's comment, " '[t]he Liquor Control Act did not take into consideration the possibility of having the proposition translated into another language' " (*Brooks*, 334 Ill. App. 3d at 478) and, therefore, did not set forth standards for doing so. In any event, the Board is not obligated to create a "perfect" ballot. *Brooks*, 334 Ill. App. 3d at 479. There is no question that certain languages are more complex to translate than others and that errors may, and are likely to, occur in translation, and this is certainly true of Chinese.[7] If every inconsistency or irregularity in ballot translation were challengeable and deemed sufficient to void an election, every election in which the Board attempted to aid those individuals not versed in English by translating the ballot into another language would be voided and the courts overwhelmed with election cases. Clearly, this is not the intent,

---

[7]See, *e.g.*, http://www.lengua.com/chinese-translation.shtml ("Chinese is a complex language. That translator, who deals with Chinese translations must have deep knowledge skills in this language alon[g]side with great patience. It's one of the most difficult languages to deal with because of it's structure. *** That's why, to provide, for instance a good Chinese to English translation or English to Chinese translation is a difficult task").

or goal, in providing bilingual translations. Moreover, only substantial, not perfect, compliance is required. To allow any and every inconsistency or irregularity in translation to void an election would run counter to the well-settled principle.

Although the transposition here may initially have confused a voter, both Dr. Gu and Mui testified that any confusion would easily be cleared up by the common description, which was accurate and easy to understand. Moreover, we find that effect must be given to the common description, even over the erroneous legal designation, for a number of reasons and that the transposition error did not render the ballot invalid as failing to substantially comply with section 9—6. First, we agree with the Interveners that the legislative intent in adding a requirement to the statute that a common description be included was to clear up confusion caused by precinct and ward numbers. See 80th Ill. Gen. Assem., House Proceedings, June 15, 1977, at 83 (statements of Representative Capparelli) ("Also a plain description of the areas to be affected *** will be required ***. These measures are designed to reduce the confusion to the voter"); 80th Ill. Gen. Assem., Senate Proceedings, May 17, 1977, at 180-81 (statements of Senator Kosinski) (same comment). The amendment occurred after the courts' decisions in *Havlik*, *Huguley*, and *Love*. The legislature itself acknowledged that confusion existed and thus mandated a common description. If the legislature did not intend for voters to rely upon the common description to aid them in voting, and thus, for this court to give it effect, there would be no reason to include such a requirement in the statute.

Second, as "all sections and portions of the statute must be read and considered together and as a whole" (*Havlik*, 132 Ill. App. 2d at 534), we can look to the whole of section 9—6, not just the statutory form to determine whether substantial compliance exists, *i.e.*, we may look to the common description included on the ballot.

Lastly, the common description is more intelligible and more likely to inform a voter of the area to be affected than the legal designation. In *Havlik*, the court made the following pertinent comments:

> "The important concept to the voter was not that of the 38th Precinct of the 16th Ward. The question uppermost in the mind of every voter would be whether or not the sale of alcoholic liquor should be prohibited in the precinct in which that voter lived and voted. ***
>
> *** The court has defined 'precinct' as 'a compact geographical unit for voting purposes in which a single polling place is located. Voters residing in the precinct may vote only at the polling place located therein.' [Citation.] Many citizens may not know or

remember the number of their precinct or of their ward." *Havlik*, 132 Ill. App. 2d at 536.

We agree that many voters do not know their precinct number. However, as the *Havlik* court noted, a voter may only vote in his or her precinct and, with respect to local referendums, for issues that relate to where he or she lives. In the event of any confusion, certainly a common description of the area affected would be more meaningful and effectively guide a voter than the precinct and ward numbers.

We acknowledge that a contrary result was reached on this identical issue in *Samour, Inc. v. Board of Election Commissioners*, 362 Ill. App. 3d 12 (2005). However, we respectfully disagree with the *Samour* court's conclusion for the reasons detailed above. Thus, based on the foregoing, we find, when viewing the ballot as a whole, including the common description of the area affected, that the ballot substantially complied with section 9—6 because it portrays the chief features of the proposition and what area was to be affected in words of plain meaning. The correct idea was conveyed to the voters. In other words, the transposition error did not deny the voters the clear opportunity to express their choice or obstruct them in voting for or against the ban of alcohol in the area in which they live. Accordingly, we reverse the trial court's judgment invalidating the election.

## II. "At Retail" Translation

The Board also contends that the trial court properly determined that the use of the term *xiāo shòu* rather than *ling shòu* substantially complied with section 9—6. Interveners, correctly, do not address this question since it was in their favor. Plaintiffs contend that the trial court erred in concluding that the use of *xiāo shòu* substantially complied since this term means "any sale" and is less clear than *ling shòu*.

■ Initially, we address a procedural question. We note that the Board stated at oral argument before this court that the "at retail" issue was not before this court, contrary to the argument raised in its brief. However, plaintiffs argue that the "at retail" challenge is an alternative basis to affirm the trial court's judgment. We questioned plaintiffs' counsel as to whether this issue was properly before this court since they failed to file a cross-appeal. Counsel responded that they need not have filed a cross-appeal. After reviewing the case law relevant to cross-appeals, we agree. "Our supreme court has held that *** one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment." *General Auto Service Station v. Maniatis*, 328 Ill. App. 3d 537, 544, 765 N.E.2d 1176 (2002).

"Findings of the trial court adverse to the appellee do not require the appellee's cross-appeal if the judgment of the trial court was not at least in part against the appellee." *Maniatis*, 328 Ill. App. 3d at 544. Thus, "[i]t follows that findings adverse to the appellee require a cross-appeal if the judgment was in part against the appellee." *Maniatis*, 328 Ill. App. 3d at 544. Here, the trial court awarded plaintiffs all that they sought—invalidation of the election. Although two of the trial court's *findings* were adverse to plaintiffs (appellees), the trial court's *judgment* was not in any part against plaintiffs. Accordingly, they need not have filed a cross-appeal to argue this issue on appeal.

In *Krause,* the plaintiffs challenged a ballot banning the sale of alcohol in their precinct on the basis that the Spanish translation contained in the ballot was "erroneous and nonsensical" and did not substantially comply with the statute. *Krause*, 287 Ill. App. 3d at 986. The court reviewed this challenge under the *de novo* standard of review. *Krause*, 287 Ill. App. 3d at 984. Ultimately, the court concluded that the Spanish question did not present the same question as presented in English. *Krause*, 287 Ill. App. 3d at 986. The court identified three wrong terms that were used in the Spanish translation that had substantially different meanings than the English proposition. As one example, the ballot used the term " 'Debida,' " which means " 'to owe,' " rather than the term " 'Bebida,' " which means " 'to drink.' " *Krause*, 287 Ill. App. 3d at 986. The Board conceded that the Spanish translation was misleading. *Krause*, 287 Ill. App. 3d at 986. The *Krause* court concluded that the ballot failed to substantially comply with the statutory form and held the election invalid. *Krause*, 287 Ill. App. 3d at 988.

■ We find that the trial court here correctly determined that the use of the term *xiāo shòu* was in substantial compliance with section 9—6. Clearly, the trial court found Dr. Gu's opinion was entitled to more weight than Mui's, which determination is not for us to disturb. Based on Gu's testimony, the use of the term *xiāo shòu* gave the correct idea to the voters and what was at issue even if the term used was not necessarily the exact expression utilized by the statutory form. There can be no question that, based on Gu's testimony, the voters were aware that the referendum related to the retail sale of alcohol. The instant case is unlike *Krause* because, there, an entirely incorrect term with a completely different meaning was used in the Spanish translation. Accordingly, we find that the trial court did not err in determining that the "at retail" translation was in substantial compliance with the Act.

## CONCLUSION

For the reasons stated, we affirm in part and reverse in part the judgment of the circuit court of Cook County.

Affirmed in part and reversed in part.

CAHILL, P.J., and McBRIDE, J., concur.